# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2157

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Michael T. Kerr, | * | |
| | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 13, 2006
Filed: December 27, 2006

_____

Before BYE, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Michael T. Kerr pleaded guilty to distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(1) and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The district court[1] sentenced him to 151 months of imprisonment and ten years of supervised release. Kerr appeals challenging the validity of several special conditions of his release as well as the district court's

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

recommendation to the Bureau of Prisons (BOP) that he participate in sex offender treatment while incarcerated. We affirm.

On October 14, 2004, FBI Innocent Images Task Force Officer James Kite downloaded a pornographic image from Kerr's computer depicting sexual intercourse between two pre-teen minors. Kerr had set up an image exchange with other computer users. He placed a notice on an Internet Relay Chat (IRC)[2] channel entitled #100%PRETEENGIRLSEXPICS, which offered access to pornographic images of pre-teen girls on a file server[3] on Kerr's computer. The notice explained IRC users could download an image from Kerr's file server only if they first uploaded an image onto Kerr's computer. Pursuant to these instructions, Officer Kite first uploaded a non-pornographic image onto Kerr's computer and then downloaded the image in question. Due to the content of the image, the FBI obtained and executed a search warrant of Kerr's home. Subsequent forensic analysis of Kerr's computer uncovered between forty-five and fifty files containing images of child pornography, some depicting children under the age of twelve and sadomasochistic violence. Although Kerr initially denied he possessed child pornography, he eventually admitted both possession and distribution of the images. He claimed he distributed these images in an attempt to spread a computer virus to the computers of pedophiles. According to Kerr, he initiated this project in October 2004 and received several images from IRC users he intended to delete. He further claimed his "virus project" was ultimately unsuccessful and, as a result, he deleted most of the images uploaded onto his computer as well as the virus files. In response to this claim, the FBI conducted further forensic analysis of Kerr's computer which failed to corroborate his story.

[2]The IRC is a system which enables computer users connected to the Internet to participate in live typed discussions much like instant messaging or chat lines. Communications on IRC channels are not monitored.

[3]Kerr had installed a file server program on his computer. This program allowed other computer users to access files stored on his computer as well as download files onto his computer.

At sentencing, Kerr did not dispute the charges against him, rather he again claimed he only possessed and distributed the child pornography in order to spread a computer virus. The district court rejected this claim noting "I don't believe it, and there is no objective evidence to substantiate [Kerr's] story." On appeal he concedes the district court rejected his story. At sentencing, he presented the expert report and testimony of psychologist Hollida Wakefield who concluded he was not a pedophile. She recommended Kerr receive no sex offender treatment while incarcerated or while on supervised release, as such treatment was unnecessary and would be harmful to him. The district court discounted Wakefield's testimony and report:

> I also find there is no way for anyone, including Ms. Wakefield, to predict who will offend as a sex offender. Many of her -- all of her conclusions -- except for the testing of the IQ and the Minnesota Multiphasic Personality Inventory, all of her conclusions are based on unquestioningly accepting [Kerr's] statements without any backup. She just took them at face value, and then applied her hunches. I find that she does not have specific expertise in sexual deviance and that many of the opinions she offered are lacking in foundation. I did not find her report helpful.

The district court sentenced Kerr to the low end of the advisory guideline range of 151 to 188 months and imposed a supervised release term of ten years. In its sentencing order, the district court recommended to the BOP that he participate in sex offender treatment while incarcerated. The district court also imposed several conditions of supervised release including certain conditions: 1) requiring him to register with the sex offender registration agency in the state where he resides or works; 2) requiring him to participate in a mental health evaluation and/or treatment program, as directed by his probation officer; and 3) requiring him to obtain permission from the probation office prior to contacting minors or going to places where minors congregate. Kerr did not object to these conditions at sentencing. On appeal, he does not challenge his sentence but rather challenges the district court's

recommendation to the BOP and the above-referenced terms of his supervised release. He also argues the district court improperly delegated to the probation office the decision of whether he should participate in sex offender treatment during supervised release.

Kerr first argues the district court erred in recommending to the BOP that he receive sex offender treatment while incarcerated. He asks the court to vacate the recommendation and remand for resentencing. Pursuant to 28 U.S.C. § 1291, we have jurisdiction over final decisions of district courts. As an initial matter, a district court's recommendation is not binding on the BOP. See United States v. Creed, 897 F.2d 963, 964 (8th Cir. 1990) (noting the district court's recommendation that the defendant participate in alcohol treatment was not binding on the BOP). Although this is an issue of first impression in this circuit, other circuits have held such non-binding recommendations are not final decisions and, as such, are not reviewable on appeal. See United States v. Yousef, 327 F.3d 56, 165 (2d Cir. 2003) ("Because these recommendations are not binding on the [BOP], they are [not] appealable as 'final decisions' under 28 U.S.C. § 1291 . . . [t]hus, we lack jurisdiction to consider these claims."); United States v. Serafini, 233 F.3d 758, 778 (3d Cir. 2000) (holding a sentencing court's non-binding recommendation to the BOP is not reviewable); United States v. De La Pena-Juarez, 214 F.3d 594, 601 (5th Cir. 2000) (same). We are persuaded by these decisions and hold a non-binding recommendation to the BOP is not reviewable as it is not a final decision of the district court.

Kerr next objects to several conditions of his supervised release. "A sentencing judge is afforded wide discretion when imposing terms of supervised release." United States v. Crume, 422 F.3d 728, 732 (8th Cir. 2005). When a defendant fails to raise an objection to those terms at sentencing, we review the terms of supervised release for plain error. United States v. Crose, 284 F.3d 911, 912 (8th Cir. 2002). "Plain error occurs if the district court deviates from a legal rule, the error is clear under current law, and the error affects the defendant's substantial rights." Id.

"While the district court enjoys broad discretion in setting special conditions of supervised release, those conditions must meet the requirements of 18 U.S.C. § 3583(d)." United States v. Davis, 452 F.3d 991, 994-95 (8th Cir. 2006). Under § 3583(d) the condition: 1) must be reasonably related to the nature and characteristics of the offense and the defendant, the deterrence of criminal conduct, the protection of the public from any further crimes of the defendant, and the defendant's correctional needs; 2) must not involve any "greater deprivation of liberty than is reasonably necessary" to advance these goals; and 3) must be consistent with any pertinent policy statements the sentencing commission has issued.

Kerr argues the district court erred in requiring him to register as a sex offender as a condition of his supervised release. He claims this condition is not warranted as there is no evidence he is actually a sexual predator, Wakefield's testimony verified he is not a sexual predator, and Iowa law does not require persons convicted of distributing or possessing child pornography to register as sex offenders. He acknowledges the sentencing guidelines list registration as a "mandatory condition" of supervised release for sex offenses, see U.S. Sentencing Guidelines (U.S.S.G.) 5D1.3(a)(7) (2005), but argues this provision is merely advisory after United States v. Booker, 543 U.S. 220 (2005).

As a threshold matter, Kerr is incorrect when he claims the Iowa Code does not require those convicted of distributing or possessing child pornography to register as sex offenders. See Iowa Code §§ 692A.2, 692A.1(5)(m), and 728.12 (mandating sex offender registration of those convicted of promoting or possessing child pornography as these offenses constitute "criminal offense[s] against a minor"). As for his argument there is no evidence he is a sexual predator and there is strong credible evidence contrary to this finding, this argument hinges on Wakefield's testimony and report. As is clear from the district court's comments at sentencing, however, it was not persuaded by this evidence. The district court discredited Wakefield's testimony and found her report was not helpful. A district court is not

-5-

required to accept an expert's opinions during sentencing. Ramos v. Weber, 303 F.3d 934, 937 (8th Cir. 2002). Because the district court refused to credit Wakefield's opinions, we should not afford them much weight on appeal. It follows these opinions should not form the sole basis for finding the district court plainly erred in its imposition of this condition. Because registration is a "mandatory condition" under the advisory guidelines, and such registration is consistent with Iowa law, we conclude the district court did not plainly err in ordering him to register as a sex offender as a condition of his supervised release.

Kerr next argues the district court erred in imposing three special conditions of supervised release which limit his contact with minors. Special Condition Eight provides he is not to communicate with minors online without prior permission from his probation officer. Special Condition Nine broadens the restriction precluding any contact with a minor without permission. Finally Special Condition Ten restricts his access to places where minors congregate without first obtaining permission. He argues these restrictions are unnecessary, are not reasonably related to the goal of rehabilitation, and are not supported by the evidence against him. Again, he relies heavily on the testimony of Wakefield. She testified Kerr is not likely to be a recidivist and is not a danger to children. He does not argue these contact conditions should not be imposed in *any* case involving child pornography, but instead argues they should not be imposed in *his* case. This is so because his offenses should be characterized as computer offenses rather than sex offenses. Kerr primarily relies on two cases in support of his contention. In United States v. Scott, 270 F.3d 632, 636 (8th Cir. 2001), we found the district court abused its discretion by imposing sex-offense-related conditions of supervised release on a defendant convicted of armed robbery, based on his conviction for forcible rape of a minor fifteen years before. We held such conditions bore no reasonable relationship to the nature of the convicted offense and found there was "no evidence supporting the need for the special conditions." Id. In addition, we recognized "the special conditions seem[ed] unlikely to serve the goals of deterrence or public safety, since the behavior on which the

-6-

special conditions are based, though highly reprehensible, has ceased." Id. Likewise, in United States v. Kent, 209 F.3d 1073, 1074 (8th Cir. 2000), we found the district court abused its discretion by imposing a special condition requiring the defendant to undergo psychological counseling where he had been convicted of mail fraud. This condition was based on the defendant's mental and physical abuse of his wife and children thirteen years prior to sentencing. We held this was an abuse of discretion because thirteen years had passed since the conduct, the defendant's offense was completely unrelated to the imposed condition and there was no evidence in the record to suggest mental counseling would further the goals of deterrence or public protection. Id. at 1077. Each of these cases is distinguishable because Kerr *was* convicted of offenses which are reasonably related to these contact conditions, as he was convicted of two child pornography offenses. Furthermore, unlike in Scott or Kent, the conduct supporting the imposition of these conditions was recent, rather than occurring several years prior to his sentencing.

The undisputed evidence demonstrates Kerr possessed and distributed child pornography, some depicting the sadistic and violent sexual abuse of pre-teen minors. This court has, in several instances, upheld similar conditions limiting contact with minors in child pornography possession cases, albeit in cases involving defendants with records of sexual abuse of minors. See United States v. Mark, 425 F.3d 505, 508 (8th Cir. 2005) (finding the district court did not abuse its discretion by imposing condition limiting contact with minors without permission, where defendant had history of violating conditions of release and the record reflects some sexual exploration with a minor); Crume, 422 F.3d at 734 (finding no abuse of discretion where district court imposed a contact condition because the child with whom the defendant desired contact was conceived as a result of his impregnating a fourteen-year-old girl); United States v. Heidebur, 417 F.3d 1002, 1004 (8th Cir. 2005) (finding district court did not abuse its discretion by imposing a contact condition where defendant was convicted of possessing sexually explicit pictures of his twelve-year-old daughter). It is true Kerr does not have a history of sexually abusing minors.

-7-

Recently, however, in United States v. Mickelson, 433 F.3d 1050 (8th Cir. 2006), we suggested the absence of such a history is not necessarily determinative when deciding whether the district court erred in imposing contact conditions. In Mickelson, the defendant pleaded guilty to receiving child pornography. He also admitted he had sent pornographic images to other people and some of these images "depicted children under the age of 12 and sadistic or masochistic violence." Id. at 1051. In upholding the district court's imposition of a condition requiring the defendant to obtain permission prior to contact with minors, we noted the lack of a history of abuse was not determinative, "for requiring prior approval before a convicted sex offender has contact with minors is a reasonable means of ensuring that such contact remains appropriate" and the defendant "has not been *forbidden* from seeing his grandchildren or any other family member; he is merely required to seek prior permission." Id. at 1057 (emphasis added). We further noted "[i]f such permission is arbitrarily or unfairly denied, [Mickelson] is free to seek relief from the district court under § 3583 (e)." Id. In contrast, we have also found a district court plainly erred when it imposed, in a child pornography receipt case, a condition denying a defendant any unsupervised contact with his minor daughter. Davis, 452 F.3d at 995. Davis is distinguishable, however, as the condition imposed allowed no unsupervised contact with a minor rather than allowing such contact after obtaining permission. In addition, in Davis we gave great weight to the protected liberty interest at issue—the defendant's parental interest in raising his child. Such an interest is not at issue here.

We are persuaded by the reasoning in Mickelson. While Kerr does not have a history of abusing minors, his offenses include both the possession and distribution of child pornography. We have found child pornography distribution offenses are more serious than mere possession offenses. See United States v. Fields, 324 F.3d 1025, 1027 (8th Cir. 2003). Like in Mickelson, he admits to distributing child pornography and also admits he possessed pornography depicting children under twelve and sadomasochistic violence. The conditions imposed by the district court

are not as restrictive as those in <u>Davis</u>, as Kerr can contact minors or enter places where minors congregate so long as he obtains prior permission from the probation office. Furthermore, because he is childless, he is not restricted from contacting his own children. It also bears mention the district court considered the possibility of revisiting these conditions at a later date noting at sentencing: "We'll see how it goes when he comes out on supervision and assess that a little further." As such, we hold these contact conditions are not unreasonably restrictive given the circumstances and the district court did not plainly err.

Finally, Kerr contends the district court erred in imposing a special condition which he claims impermissibly delegates to the probation office the decision of whether to place him in a sex offender treatment program upon his release from prison. Special Condition Four mandates: "The defendant shall participate in a mental health evaluation and/or treatment program, as directed by his probation officer. This may include participation in a sex offender treatment program or any such similar program offered in the defendant's approved district of residence."

A sentencing judge may delegate limited authority to non-judicial officials as long as the judge retains and exercises ultimate responsibility. <u>Mickelson</u>, 433 F.3d at 1056. Kerr relies on <u>Kent</u>, where we reversed a district court's delegation of authority to the probation officer to decide whether to require the defendant to undergo mental health treatment. We did so because the district court's statements at sentencing suggested the probation officer rather than the district court would "retain and exercise ultimate responsibility over the situation." <u>Kent</u>, 209 F.3d at 1079. In <u>Kent</u>, the district court charged the probation officer with the future determination of whether the defendant would receive psychiatric counseling and, when asked whether or not the defendant could move for reconsideration if he disagreed with the probation officer's decision, the district court responded: "I don't hope to be riding herd on such questions, but, if necessary, I will. But remember, the probation officer is my personal staff and I have confidence in them." <u>Id.</u> at 1075.

In the present case the district court made no such statements indicating it was relinquishing final authority or granting the probation officer carte blanche over Kerr's treatment. See Mickelson, 433 F.3d at 1057 (finding no abuse of discretion where the district court imposed a condition requiring mental health treatment if the probation officer "deemed it appropriate" but had not made statements which "could have been interpreted to vest final authority in the probation office"). In fact, as noted above, the district court indicated it would consider revisiting Kerr's conditions of supervised release after his release. As such, we conclude the district court did not impermissibly delegate its authority by imposing Special Condition Four.

Accordingly, the judgment of the district court is affirmed.

_____