# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-2310

_____

United States of America

*Plaintiff - Appellee*

v.

Martin Larry Wilson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: January 14, 2013
Filed: March 14, 2013

_____

Before WOLLMAN, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Martin Larry Wilson was sentenced to 41 months imprisonment followed by three years of supervised release after pleading guilty to possession of a firearm as a felon and domestic abuse misdemeanant in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(9), and 924(a)(2). After Wilson stipulated to violating multiple terms of his

supervised release, the district court[1] revoked his supervised release and ordered him not to have contact with his domestic abuse victim, C.D., and her family members. Wilson appeals only this no-contact order. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

On March 13, 2012, the government filed a petition alleging Wilson violated the terms of his supervised release by failing to appear for two random urine tests, consuming alcohol, and committing new law violations. The petition alleged the new law violations consisted of committing domestic abuse assault against C.D. and repeatedly violating an Iowa state court's order that he have no contact with C.D. The government eventually withdrew the allegation that Wilson committed domestic abuse assault. However, Wilson admitted to missing the two random urine tests, consuming alcohol, and pleading guilty to violating the state court's no-contact order on at least six occasions.

A magistrate judge issued a report recommending revoking Wilson's supervised release, imposing six months imprisonment, and requiring Wilson to complete his original term of supervised release following imprisonment. United States v. Wilson, No. CR07-0033, 2012 WL 1079963, at *3 (N.D. Iowa Mar. 30, 2012). The magistrate judge stated:

> Defendant's supervised release has been modified once already due to his failure to comply with the Court's Order . . . . Defendant repeatedly violated a no-contact order. Most significantly, after Defendant was

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, adopting the report and recommendations of the Honorable Jon Stuart Scoles, United States Magistrate Judge for the Northern District of Iowa.

sentenced for the first no-contact violation, he continued to contact the alleged victim. These repeated violations demonstrate Defendant's belief that he is not required to comply with the law or the Court's orders.

Id. Consequently, the magistrate judge recommended that Wilson "be ordered to have no contact with [C.D.]." Id.

Wilson objected to this recommendation, and the district court overruled his objection. United States v. Wilson, No. CR07-0033, slip op. at 5 (N.D. Iowa May 9, 2012). The court reasoned that "[t]he basis of Defendant's new law violations is his continued contact with [C.D.] after the Iowa District Court entered a no contact order." Id. Adopting the magistrate judge's Report and Recommendation, the district court entered an order stating Wilson "shall have no contact during his term of imprisonment or term of supervision with [C.D.]." Id. at 6.

Wilson already has completed his term of imprisonment, but he remains on supervised release until September 20, 2013.

II.

A.

Wilson first argues the district court erred in imposing the no-contact order during his term of supervised release because the court did not make a factual finding that he had assaulted or abused C.D., and because past violations of the now-lifted Iowa order do not show a continuing need for a no-contact order. As explained below, however, the district court was not required to make these specific findings because it articulated other sufficient justifications for the no-contact order.

"A sentencing judge is afforded wide discretion when imposing terms of supervised release, and we review a decision to impose special terms of supervised release for abuse of that discretion." United States v. Crume, 422 F.3d 728, 732 (8th Cir. 2005) (internal citation omitted). As relevant to this appeal, special conditions must (1) "be 'reasonably related' to . . . the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical or other correctional needs" and (2) "'involve[] no greater deprivation of liberty than is reasonably necessary' to advance deterrence, the protection of the public from future crimes of the defendant, and the defendant's correctional needs."[2] Id. (quoting 18 U.S.C. § 3583(d)(2)).

Here, the district court imposed the no-contact order because violation of the Iowa no-contact order was one of the grounds for revoking Wilson's supervised release, and because Wilson's repeated violations of the Iowa order showed lack of respect for the law. These justifications are "reasonably related" to Wilson's offense, history and characteristics, the need to deter him from future criminal conduct, and the need to protect C.D. as a member of the public. See United States v. Smart, 472 F.3d 556, 559 (8th Cir. 2006) (upholding special condition requiring defendant to undergo sex offender treatment when federal conviction was for being felon in possession of firearm but defendant had earlier state convictions for sex offenses). Moreover, the no-contact order is not a "greater deprivation of liberty than is reasonably necessary" to promote deterrence, protect the public, and advance Wilson's correctional needs, since the special condition simply requires Wilson to do now what he was supposed to do earlier—have no contact with C.D. See United

_____

[2]Special conditions also must "be consistent with any pertinent policy statements issued by the sentencing commission." Crume, 422 F.3d at 732 (citing 18 U.S.C. § 3583(d)(3)). Neither party has identified any policy statements pertinent to Wilson's appeal.

-4-

States v. Walters, 643 F.3d 1077, 1081 (8th Cir. 2011) (holding district court did not abuse its discretion in imposing no-contact order "because of its concern that [the defendant] may not have been fully rehabilitated"). Thus, the district court did not abuse its discretion in ordering Wilson to have no contact with C.D. during his term of supervised release.

## B.

Wilson next argues the district court erred in extending the no-contact order to cover his term of imprisonment. Both parties agree that while a district court can make non-binding recommendations to the Bureau of Prisons ("BOP") regarding a defendant's communication during imprisonment, a district court does not have statutory authority to issue binding orders. See United States v. Kerr, 472 F.3d 517, 520 (8th Cir. 2006) ("[A] district court's recommendation is not binding on the BOP."). Thus, the issue here is whether the district court properly issued a non-binding recommendation, or whether it improperly issued an unauthorized binding order. Because this involves the district court's authority to impose a particular sentence, it is a legal question we review de novo. See United States v. Johnson, 517 F.3d 1020, 1023 (8th Cir. 2008). As explained below, however, we need not resolve this issue because we hold that any error was harmless.

As a threshold matter, the government argues this issue is moot because Wilson already has completed his term of imprisonment. "[W]e must the address the issue of mootness because our judicial power extends only to actual cases and controversies." United States v. Melton, 666 F.3d 513, 515 n.3 (8th Cir. 2012) (internal quotation marks omitted). We addressed a similar argument in Melton, where the defendant was appealing both the revocation of his supervised release and a special condition that he spend 120 days at a residential reentry center following his release from prison. Id. at 514-15. By the time of his appeal, he had served his six-

month revocation sentence and had completed the 120 days at the reentry center.  Id. at 515 n.3.  This Court held the defendant's appeal was not moot because "the actions of which [he] complains are so short in duration that they evade review" and because "there is a reasonable likelihood that [he] will once again be subjected to the same action" since his supervised release had been revoked twice already.  Id.  Wilson's challenge involves an even shorter duration than the Melton defendant's—six months as compared to six months plus 120 days.  Moreover, like the Melton defendant, Wilson has a history of violating the terms of his supervised release.  Thus, under Melton, Wilson's appeal is not moot.

The government alternatively asks us to view the no-contact order as a non-binding recommendation, noting that such recommendations are not reviewable because they are not final orders.  See Kerr, 472 F.3d at 520.  This Circuit does not appear to have addressed whether we may interpret an order as a non-binding recommendation when the district court has both used mandatory terms in issuing the order and failed to suggest anywhere in the judgment that the order is meant as a recommendation.   At least two other circuit courts have rejected such an interpretation and found it was error for a district court to issue a binding order.  See United States v. Cintrón-Fernández, 356 F.3d 340, 345-46 (1st Cir. 2004); United States v. Molina, 985 F.2d 576, No. 92-10028, 1993 WL 20492, at *1 (9th Cir. Feb. 1, 1993) (table) (unpublished per curiam).

We need not decide whether we may interpret this no-contact order as a non-binding recommendation, however, because we accept the government's final argument that even if the district court did improperly issue an unauthorized binding order, the error here was harmless.  See Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").  As the beneficiary of a sentencing error, the government bears the burden of proving the error did not affect Wilson's substantial rights.  See United States v. Craiglow,

432 F.3d 816, 819 (8th Cir. 2005) (citing Fed. R. Crim. P. 52(a)). At this point in time, Wilson has completed his term of imprisonment. The government notes in its brief that Wilson does not suggest the BOP ever enforced the order during his term of imprisonment or that the order otherwise prejudiced him. Wilson did not respond to the government's harmless error argument, and there is no evidence on appeal that during Wilson's term of imprisonment, the BOP viewed the no-contact order as mandatory, the BOP ever attempted to restrict his contact with C.D., or he personally decided not to contact C.D. as a result of the order. In sum, there is no evidence that the no-contact order had any impact whatsoever on Wilson, much less that it affected his substantial rights. Thus, we hold the government carried its burden of proving any error was harmless. Cf. id. at 819-20 (holding district court's treatment of sentencing guidelines as mandatory was harmless error where district court stated it would impose same sentence if guidelines were only advisory).

III.

Accordingly, we affirm.

_____